Dalrie A. BERG, D.O., Plaintiff–Appellant,

v.

Jack SHAPIRO; Humana Hospital Mountain View, Inc.; John A. Hoffman; and Thomas J. Blanchard, M.D., Defendants–Appellees.

No. 00CA0002.

Colorado Court of Appeals, Div. IV.

March 15, 2001.

Rehearing Denied May 31, 2001.

Certiorari Denied Dec. 17, 2001.

and § 24–51–1105, C.R.S.2000.

110

Sims & Boster, C. Garold Sims, Denver, CO; Allen, Holden & McIntosh Law Office, L.L.C., Audrey Hanson McIntosh, Jefferson City, MO, for Plaintiff–Appellant.

Coudert Brothers, Catherine A.G. Sparkman, Denver, CO, for Defendants–Appellees.

Opinion by Judge RULAND.

Plaintiff, Dalrie A. Berg, appeals from the judgment dismissing his complaint and from the order awarding attorney fees and costs in favor of defendants, Jack Shapiro, Humana Hospital Mountain View, Inc. (the hospital), John A. Hoffman, and Thomas J. Blanchard, M.D. We affirm the judgment, reverse the order granting attorney fees and costs, and remand the case for further proceedings.

Plaintiff was a physician with privileges to practice obstetrics at the hospital. Defendant Shapiro was the hospital's executive director, defendant Hoffman was the deputy director, and defendant Blanchard was the vice-chairman of the family practice department. This department issues privileges to physicians to practice obstetrics at the hospital.

Following the delivery of a baby, a delivery room nurse prepared an incident report indicating that plaintiff had committed malpractice during the procedure. Plaintiff's obstetrical privileges were summarily suspended pending further investigation by an ad hoc committee. Following that inquiry, the committee recommended that plaintiff's privileges be restored if he complied with certain educational and supervisory conditions.

Later, plaintiff submitted a written, voluntary resignation of his privileges to practice at the hospital. Still later, he brought this action against the hospital and the other defendants, asserting common law claims for damages and injunctive relief and a civil rights claim under 42 U.S.C. § 1983 (2000).

The § 1983 claim was dismissed by the trial court after an evidentiary hearing, and that ruling was affirmed by another division of this court. In that proceeding, the trial court also ruled that defendants had immunity from plaintiff's claims based upon 42 U.S.C. § 11111(a)(1) (2000) of the Health Care Quality Improvement Act (HCQIA), and § 12–36.5–105(1), C.R.S.2000. This ruling was reversed, however, because plaintiff did not have access to certain discoverable information at the time of the evidentiary hearing. *See Berg v. Shapiro,* 948 P.2d 59 (Colo.App.1997).

After plaintiff obtained the information, the trial court held a second evidentiary hearing on the issue of immunity. Again, the trial court found that defendants were entitled to immunity and entered the judgment and order challenged in this appeal.

## I.

Plaintiff contends that the trial court erred in dismissing his complaint based on its conclusion that defendants had immunity under 42 U.S.C. § 11111(a)(1) and § 12–36.5–105(1). Specifically, plaintiff asserts that defendants were not entitled to immunity because no reasonable effort was made to verify the contents of the nurse's incident report and because the record does not support a finding that a suspension was warranted. We disagree.

In pertinent part, 42 U.S.C. § 11111(a)(1) grants the "professional review body" and "any person who participates with or assists the body with respect to the action" immunity from civil claims if the professional review satisfies the standards set forth in 42 U.S.C. § 11112(a) (2000). To secure immunity, § 11112(a) requires that action be taken:

(1) in the reasonable belief that the action was in the furtherance of quality health care,

(2) after a reasonable effort to obtain the facts . . . ,

(3) after adequate notice and hearing procedures are afforded to the physician . . . and

(4) in the reasonable belief that the action was warranted by the facts known af-

ter such reasonable effort to obtain facts ....

However, the statute also permits an immediate suspension of privileges, "subject to subsequent notice and hearing or other adequate procedures, where the failure to take such an action may result in an *imminent danger* to the health of any individual." 42 U.S.C. § 11112(c)(2) (2000) (emphasis supplied). As pertinent here, § 12–36.5–105(1) essentially tracks § 11112(a) of the HCQIA.

■ The standard for our review of the trial court's ruling on immunity is unique in terms of summary judgment proceedings. This is because § 11112(a)(4) creates a presumption that the defendants met the standards contained in that section "unless the presumption is rebutted by a preponderance of the evidence," and thus an evidentiary hearing may be conducted. *See also Mathews v. Lancaster General Hospital*, 87 F.3d 624 (3d Cir.1996)(because of the statutory presumption, there is an "unusual" standard for reviewing summary judgment motions).

■ Further, while the pre-suspension investigation must be reasonable under the circumstances, the HCQIA does not require a "perfect investigation." Instead, the trial court must make its assessment of this issue based upon the facts known at the time of the suspension and not based on facts discovered after the event. *Sklaroff v. Allegheny Health Education Research Foundation*, 1996 WL 383137 (E.D.Pa. No. 95CV4758, July 8, 1996)(1996 U.S. Dist. LEXIS 9484), *aff'd*, 118 F.3d 1578 (3d Cir.1997); *see also Pfenninger v. Exempla, Inc.*, 116 F.Supp.2d 1184 (D.Colo.2000).

■ Finally, the standard to be applied to the conduct of defendants is one of objective reasonableness under the circumstances. *See Brown v. Presbyterian Healthcare Services*, 101 F.3d 1324 (10th Cir.1996). Hence, even if there may be some dispute about the facts, if the defendants' conduct is properly considered by the trial court to be reasonable, the plaintiff has not rebutted the presumption, and immunity is available. *See Mathews v. Lancaster General Hospital, supra.*

Here, the chair of the hospital's obstetrics and gynecology department at the time of the incident (the complaining physician) testified that she recommended plaintiff's summary suspension. She stated that her knowledge of other problems with plaintiff's medical practice and her conversation with the delivery room nurse prompted her decision. In that conversation the nurse indicated that plaintiff failed to assist in a breech delivery, improperly administered medication, and inserted certain sutures without local anesthetic. In a letter prepared for defendants, the complaining physician stated:

> I have been made aware of an incident that occurred on the labor and delivery unit.... The details of the case as documented in the nurse's report are of the gravest concern. The physician's care as described was inappropriate and dangerous to both patients (mother and fetus). I agree that an immediate suspension of obstetrical privileges be instituted.

While plaintiff produced testimony from an expert physician that the complaining physician's investigation was inadequate in important respects and that there was no imminent danger, the expert did not opine that defendants' reliance on the complaining physician's assessment was unreasonable. *See Mathews v. Lancaster General Hospital, supra* (an expert opinion that a physician's care was adequate does not rebut the statutory presumption).

The court relied on this testimony and the letter in making its determination that there was a reasonable belief by defendants that an "imminent danger" existed, thereby supporting their decision summarily to suspend plaintiff. Under these circumstances, we are unable to conclude that the trial court erred in its application of the objective test of reasonableness based upon the information presented to defendants at the time.

## II.

Based upon § 13–17–201, C.R.S.2000, the trial court awarded attorney fees and costs for the defense of plaintiff's § 1983 claim. The trial court awarded additional fees and costs to defendants based upon its dismissal of the state law tort claims for intentional

interference with contract, libel, outrageous conduct, and civil conspiracy to cause intentional interference with a contract. Total fees awarded exceeded $316,000, and the award of costs was approximately $13,000. Plaintiff claims that the trial court erred in making this award. We agree as to the attorney fees.

### A.

■ Section 13–17–201 authorizes an award of fees if a tort action is dismissed pursuant to a motion filed under C.R.C.P. 12(b). We agree with plaintiff that an award of fees under this statute was error for two reasons.

First, an award of fees under this provision requires that the entire tort action be dismissed pursuant to a motion filed under C.R.C.P. 12(b). *Jaffe v. City & County of Denver*, 15 P.3d 806 (Colo.App.2000). Such was not the case here.

■ Second, § 13–17–201 does not apply to a § 1983 claim. Instead, 42 U.S.C. § 1988 (2000) applies, and that section does not authorize an award of fees and costs unless the claim is properly characterized as frivolous, vexatious, unreasonable, groundless, or made in bad faith. *State v. Golden's Concrete Co.*, 962 P.2d 919 (Colo.1998).

To the extent that defendants seek to justify the award based upon an argument that the claim was frivolous, we also disagree. The claim was resolved based upon an interpretation of the legal concept of "state action." *See Berg v. Shapiro, supra.* Our review of the prior appellate opinion in this case reveals that plaintiff's argument there may not be properly characterized as totally lacking in legal support. *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo. 1993).

### B.

■ The fees awarded to defendants for dismissal of the state law tort claims were based upon 42 U.S.C. § 11113 (2000) of HCQIA. This statute authorizes an award of fees and costs for persons involved in the medical peer review process for claims arising out of that process if the claims are "frivolous, unreasonable, without foundation, or in bad faith."

■ The trial court based its award upon a finding that the state law tort claims were without foundation. A claim lacks a proper foundation if there is no evidence to support the allegations or if there is some problem with the case such that it is apparent the claim cannot be successful. *See Smith v. Smythe–Cramer Co.,* 754 F.2d 180 (6th Cir. 1985). With reference to defendants Shapiro and Hoffman, the trial court also found that these individuals lacked authority to take any of the action complained of and that they were "gofers" only in the investigative process.

As noted, at the evidentiary hearing plaintiff presented the deposition testimony of a physician qualified as an expert who opined that the suspension was totally unwarranted. In that physician's view, defendants failed to conduct an appropriate investigation prior to this action, and in particular they failed even to interview plaintiff. Plaintiff also presented evidence through this expert that there was no imminent danger to any present or potential hospital patient.

While we have affirmed the court's ruling on immunity, we conclude that the award of fees in these circumstances was error. First, when plaintiff initially filed this case in 1993, the standards for resolution of the unique kind of summary judgment proceeding here had not been settled. *See Mathews v. Lancaster General Hospital, supra.* Indeed, the first case to reach the appellate courts in this state was not announced until 1999. *See Nicholas v. North Colorado Medical Center, Inc.,* 12 P.3d 280 (Colo.App.1999).

Further, even at this time, the appellate decisions present some conflict on the proper resolution of the immunity issue. Under *Bryan v. James E. Holmes Regional Medical Center,* 33 F.3d 1318 (11th Cir.1994), the Eleventh Circuit would not allow a jury to decide the ultimate issue of immunity. *Brown v. Presbyterian Healthcare Services, supra,* from the Tenth Circuit may be read as holding to the contrary. *See also Nicholas v. North Colorado Medical Center, Inc., supra.*

To the extent that defendants Shapiro and Hoffman rely on the court's finding that they were not authorized to order the suspension, we note that their involvement in the suspension decision is undisputed. Specifically, the complaining physician testified that she was questioned by Hoffman concerning the delivery incident. It is undisputed that Hoffman was also involved in various other discussions concerning plaintiff that were conducted prior to the suspension.

Shapiro signed the letter to plaintiff advising of the suspension and the reasons therefor. Shapiro had prior discussions with others indicating his view that plaintiff should not be on the staff. Hence, we are unable to conclude that the claims against them may be properly characterized as unfounded. *See Smith v. Smythe–Cramer Co., supra.*

The judgment dismissing plaintiff's complaint on immunity grounds is affirmed. The order awarding fees is reversed, and the cause is remanded for further proceedings to determine an appropriate award of costs under C.R.C.P. 54(d) given the resolution of this appeal.

DAVIDSON and KAPELKE, JJ., concur.